IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| April Bryson, | ) | Civil Action No.: 8:09-321-HMH-BHH |
| Plaintiff, | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| MAU, Inc., | ) | |
| Defendant. | ) | |

This matter is before the Court on the defendant's motion for summary judgment [Doc. 42] pursuant to Federal Rule of Civil Procedure 56. The plaintiff has pled claims of disability discrimination pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq*.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## FACTS PRESENTED

The defendant has a contractual agreement with BMW Manufacturing Co. (hereinafter "BMW") pursuant to which the defendant provides BMW with hourly Production Associates at BMW's Spartanburg, South Carolina plant. (Oakley Dep. at 8.) The plaintiff was an applicant for one of the hourly Production Associate positions.

Applicants seeking these positions at BMW are required to go through a five step process which is comprised of a written assessment, a rim mount test, a background check and drug screen, a physical, and a functional capacity exam. (Oakley Dep. at 10). At the second step, and under BMW's hiring guidelines, an applicant must mount at least 42 rims during the 90 minute time period, while meeting safety and quality specifications, in order

to be found within the guidelines. (Davey ¶ 4.) At the final step, the functional capacity exam is comprised of both a static and a dynamic lift and requires the applicant to lift between 50 and 100 pounds. (Alday Aff. ¶ 2, 3.) The static lift requires the applicant to exert as much force as possible while the dynamic lift is a dead weight lift. *Id*.

On April 25, 2006, the plaintiff submitted an application for a Production Associate position at BMW. (Pl. Dep. at 18.) On the way to take the rim mount test, the plaintiff was in an accident. *Id*. at 26. Upon examination by a physician for injuries related to the accident, it was discovered that the plaintiff was pregnant. (Pl. Dep. at 29.)

When the plaintiff finally appeared to take the rim mount test, she expressed concern over whether she could perform the test while pregnant. (Pl. Dep. at 31-32.) She was asked to obtain a medical release from her physician that she could lift 20 pounds. *Id*. at 32. Her doctor, Timothy Duniho, M.D., issued such a note, indicating that the plaintiff could lift up to 20 pounds. *Id*. at 35, Ex. 2. The plaintiff eventually took the rim mount test and passed. *Id*. at 42-43, Ex. 6.

The plaintiff, however, was later not cleared to take the functional capacity exam, at step five of the application process. *Id*. at 45-47. Her application was placed on a "medical hold" by Spartanburg Regional Occupational Health & Minor Care because of the limitation to lifting only 20 pounds, which is its standard procedure. (Alday Aff. ¶ 3.)

The plaintiff has testified that Dwayne Oakley, the defendant's Site Manager at BMW, told her that her physician needed to talk with Spartanburg Regional regarding the restriction and whether it could be lifted. (Pl. Dep. at 52.) It is undisputed that the restriction was never lifted and that the plaintiff's physician never sent over a note otherwise indicating that the plaintiff could take the functional capacity exam. (Alday Aff. ¶ 6; Duniho Dep. at 12-13.) It is also undisputed that Dr. Duniho has testified that he never would have so authorized the plaintiff. (Duniho Dep. at 15.) Because the plaintiff did not provide the necessary information to Spartanburg Regional, Spartanburg Regional never cleared her

to take the functional capacity exam. (Alday ¶ 6.) As of the time when she filed her Charge of Discrimination with the Equal Employment Opportunity Commission, her application was still on hold; it had not been denied.

## **APPLICABLE LAW**

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position

3

is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## **ANALYSIS**

The plaintiff has pled a failure to hire claim under the ADA on account of her pregnancy. The determinative question in this case is whether the plaintiff is disabled within the meaning of the ADA. A court may resolve this issue as a matter of law. *See Heiko v. Colombo Savings Bank, F.S.B.*, 434 F.3d 249, 254 (4th Cir. 2006). The Court concludes that the plaintiff has produced no evidence from which a jury could conclude that her condition meets the ADA's definition of disability.

The ADA provides:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).

In order to establish a violation of the ADA, therefore, a plaintiff must prove: (1) that he has a disability; (2) that he is otherwise qualified for the employment or benefit in question; and (3) that he was excluded from the employment or benefit due to discrimination solely on the basis of the disability.[1] *See Doe v. University of Maryland Medical System Corp.*, 50 F.3d 1261, 1264-65 (4th Cir. 1995). The defendant first contends that the plaintiff cannot demonstrate that she was "disabled." Under the ADA, disability is defined as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). The plaintiff claims that she was disabled as defined in both subsections (A) and (C) of Section 12102. The Court will analyze both claims in turn.

---

[1] The plaintiff is entitled to rely on the burden shifting scheme as prescribed by the United States Supreme Court, in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), to establish her claim. *See Wilson v. Phoenix Specialty Mfg. Co., Inc.*, 513 F.3d 378, 387 (4th Cir. 2008); *EEOC v. Sears Roebuck and Co.*, 243 F.3d 846, 851 (4th Cir. 2001). That is how the parties have argued the case. The Court, however, believes that the plaintiff's case is so fundamentally untenable that an express discussion of *McDonnell Douglas* is unnecessary. But, to be sure, the plaintiff's case would fail under that paradigm. Specifically, the plaintiff cannot meet her initial burden, under *McDonnell Douglas*, to establish a *prima facie* case. In order to establish a *prima facie* case of discriminatory failure to hire under the ADA, the plaintiff must establish that (1) she is within the ADA's protected class; (2) she applied and was qualified for a job for which MAU was seeking applicants; (3) despite her qualifications, she was rejected and (4) after her rejection, the position remained open while the defendant continued to seek other applicants, and non-disabled applicants were chosen for the position rather than her. *See id.* As will be discussed below, in more general terms, the plaintiff cannot establish either that she is within the ADA's protected class – she has a disability – or that she was rejected for the position.

It should be noted that the ADA was amended in 2008. *See* ADA Amendments Act of 2008, P.U.B. L. No. 110-325, 122 STAT 3553 (2008). Although the Fourth Circuit, apparently, has yet to decide it, other courts, including the Fifth and Sixth Circuits have concluded that the amendments do not apply retroactively to pre-amendment conduct. *See Milholland v. Sumner County Bd. of Educ.*, 569 F.3d 562, 567 (6th Cir. 2009); *EEOC v. Agro Distrib. LLC*, 555 F.3d 462, 469 n.8 (5th Cir. 2009). It is undisputed that the facts related to this case all arose prior to the amendments. In the absence of Fourth Circuit instruction, therefore, the Court would defer to the well-reasoned determinations of other courts and decline to apply them. The plaintiff has made no rejoinder other than to emphasize that the Fourth Circuit has not expressly decided it.

### A. *Actual Disability*

In order to meet the definition of actual disability under the prior version of the ADA, Bryson must prove "(1) that she has a physical or mental impairment, (2) that this impairment implicates at least one major life activity, and (3) that the limitation is substantial." *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 254 (4th Cir. 2006). "With near unanimity, federal courts have held that a pregnancy is not a 'disability' under the ADA," absent some atypical complication. *See Wenzlaff v. NationsBank*, 940 F. Supp. 889, 890 (D. Md. 1996). Although the Fourth Circuit has apparently not addressed it, district courts have read the ADA to preclude "normal" pregnancy, and its common limitations, from the definition of disability. *See id.; see, e.g., Gabriel v. City of Chicago*, 9 F. Supp. 2d 974, 981-82 (N.D. Ill.1998) ("[M]any courts have held that pregnancy, absent abnormal or unusual circumstances, is not a disability."); *Hernandez v. City of Hartford*, 959 F. Supp. 125, 130 (D. Conn.1997) ("Pregnancy and related medical conditions have been held not to be physical impairments."); *Byerly v. Herr Foods, Inc.*, 1993 WL 101196, at *4 (E.D. Pa.) ("The statute itself [ADA], however, clearly indicates that pregnancy was not to be considered an impairment by the Act."); *Gudenkauf v. Stauffer Communications Inc.*, 922

F. Supp. 465, 474 (D. Kansas 1996) ("[T]his court is not persuaded . . . that pregnancy as the natural consequence of a normal reproductive system is a disability [under the ADA]."); *Jessie v. Carter Health Care Center, Inc.*, 926 F.Supp. 613, 617 (E.D. Kentucky 1996) ("No unusual circumstances exist with respect to Jessie's pregnancy and thus such condition is not a 'physical impairment' under the ADA."); *Villarreal v. J.E. Merit Constructors, Inc.*, 895 F. Supp. 149, 152 (S.D. Tex.1995) ("[P]regnancy and related medical conditions do not, absent unusual circumstances, constitute a 'physical impairment' under the ADA. Therefore, pregnancy and related medical conditions are not 'disabilities' as that term is defined by the ADA.").

The Court has not found a single case which has concluded differently. *See Martinez v. N.B.C., Inc.*, 49 F. Supp. 2d 305, 309 (S.D.N.Y.1999) ("**Every court** to consider the question to date has ruled that 'pregnancy and related medical conditions do not, absent unusual conditions, constitute a [disability] under the ADA.'" (emphasis added) (quoting *LaCoparra v. Pergament Home Ctrs., Inc.*, 982 F. Supp. 213, 228 (S.D.N.Y.1997)). The plaintiff's recourse to *Gauthier v. Sunhealth Specialty Services, Inc.*, 555 F. Supp. 2d 227 (D. Mass. 2008) is unpersuasive as that court was construing a state discrimination statute, and stands in direct contravention to the unanimous conclusion of federal courts' interpretation of the ADA, itself. Moreover, the plaintiff has not produced any evidence or argument that her lifting restriction was atypical, uncommon, or otherwise not a reasonable incident of normal pregnancy. Her physician has testified that the limitations placed upon her are consistent with what he would prescribe for anyone at a similar stage of pregnancy. (See Duniho Dep. at 15.)

As some of these same courts have noted, the EEOC regulations, operative at all times relevant to this case, call for the same conclusion. *See Hernandez*, 959 F. Supp. at 130. Namely, "conditions, such as pregnancy, that are not the result of a physiological

7

disorder ***are not impairments***" under 29 C.F.R. Pt. 1630.2(h)(1) App. (emphasis added).[2]

Moreover, limitations on lifting, such as suffered by the plaintiff, have been treated as simply an incident of the pregnancy itself, temporary and non-disabling, so long as the lifting restriction is not somehow permanent or extraordinary. *Leahy v. Gap, Inc.*, 2008 WL 2946007, at *4 (E.D.N.Y. July 29, 2008). The plaintiff has not made any argument that her lifting restriction was of a quality and kind any different than would be normally imposed on a pregnancy of comparable progression. She certainly has not alleged any permanent or unusually loitering presence of the lifting limitation. In fact, she adamantly contends that she works without any ongoing limitation, now.

Finally, courts have rejected pregnancy as a disability for its temporary nature. *See id*. To establish a disability under the ADA, there must be some proof of permanency. *Id.; see Pollard v. High's of Baltimore, Inc.,* 281 F.3d 462, 468-69 (4th Cir. 2002);[3] *Adams v. Citizens Advise Bureau*, 187 F .3d 315, 316-17 (2d Cir.1999). In other words, the limitation on the claimed major life activity cannot be temporary. *Id*. (temporary neck, back, and knee injury lasting three and a half months not a disability); *Colwell v. Suffolk County Police Dept.*, 158 F.3d 635, 646 (2d Cir.1998) (temporary impairment of seven months not substantially limiting).

The plaintiff would urge the Court to reinvent the wheel in regards to pregnancy as a disability by asking the undersigned to revisit, in a general sense, what constitutes a major life activity and a substantial limitation to it. But, as the Court has noted, this is

---

[2] This portion of the regulations has remained unchanged even after the amendments.

[3] *Pollard* does recognize that temporary conditions still require a case-by-case evaluation and that "at some point the duration of an impairment could be so long that it cannot properly be characterized as temporary." *Pollard*, 281 F.3d at 468. As far as the Court can tell, however, no court has ever concluded that pregnancy meets this exception or is anything other than temporary, in a legal sense (although some mothers might certainly take a different view). The plaintiff does not allege any unusual duration of her own pregnancy.

8

heavily traced ground. The Court is persuaded by the many courts which have sat with the issue before and concluded resoundingly that pregnancies, like the plaintiff's, do not qualify as disability.

### B. Regarded As Disabled

Alternatively, the plaintiff contends, pursuant to 42 U.S.C. 12102(2)(C), that she was regarded by the defendant as having been disabled. In order to demonstrate that the defendant regarded her as disabled, however, the plaintiff must show that the defendant mistakenly believed her to have either a substantially limiting impairment that she did not have, or a substantially limiting impairment when, in fact, her impairment was nonlimiting. *Pollard v. High's of Baltimore, Inc.*, 281 F.3d 462, 471 (4th Cir. 2002); *see also Murphy v. United Parcel Serv.*, 527 U.S. 516, 521-22 (1999) ("A person is 'regarded as' disabled within the meaning of the ADA if his or her employer mistakenly believes that the person's actual, nonlimiting impairment substantially limits one or more major life activities.").

The Court frankly has some difficulty processing the meaning of the plaintiff's claim in this regard. The undisputed facts are that

- *the plaintiff* herself raised to the defendant concerns about her ability to take the rim mount test, due to her pregnancy (Bryson Dep. at 31-32);

- the plaintiff obtained a note from her doctor stating that she could lift up to 20 pounds (Bryson Dep. at 35);

- the functional capacity exam required applicants to lift between 50 and 100 pounds (Bryson Dep. at 45);

- the plaintiff nor her physician ever provided Spartanburg Regional with any notice that the 20 pound lifting restriction had been removed or that the plaintiff was otherwise permitted to lift between 50 and 100 pounds (Alday Aff. ¶ 6);

- the plaintiff's physician, Dr. Duniho, stated that he would not have authorized the plaintiff to lift that amount of weight while pregnant (Duniho Dep. at 14-15).

The plaintiff, however, would now somehow attempt to lay at the feet of the defendant discriminatory responsibility for a restriction solicited by her, prescribed by her

9

physician, which was indisputably never lifted, and where her physician has testified that he would have never authorized her to lift 50 to 100 pounds.

The plaintiff strangely alleges: "There is no evidence Spartanburg Regional performed any examinations regarding the 20 pound lifting restriction or inquired as to whether or not Dr. Duniho performed any examinations on Bryson to determine any individualized lifting restrictions. MAU by and through Spartanburg Regional and/or BMW relied upon an unsubstantiated and cursory medical opinion." (Pl. Resp. at 14.) But this argument begs the question as to why the defendant or Spartanburg Regional would bear the obligation of presuming that *the plaintiff and her own physician* would purposefully or negligently misrepresent the plaintiff's own limitation or fail to lift it when it was improvidently prescribed to her detriment? This is not a situation where the defendant or Spartanburg Regional procured an opinion from their own treating source, in a cursory fashion, simply to obstruct the plaintiff's application. The limitation is from the plaintiff's physician.

The plaintiff concludes, summarily, that the hold placed on the application, therefore, is "an obvious indication indicative of Spartanburg Regional regarding Bryson as being disabled." (Pl. Resp. at 14.) But, it is not enough that the defendant understood that the plaintiff had a limitation. Obviously, she did.[4] Instead, the defendant had to believe that the plaintiff suffered a condition which substantially limited her ability to perform a major life activity. There is no such evidence.

In fact, the evidence with which the plaintiff would condemn the defendant, exonerates it. The plaintiff contends that Dwayne Oakley, the defendant's Site Manager, told the plaintiff to "come back after she had had the baby." (Bryson Dep. at 52.) The plaintiff would offer the remark as disparaging. Although Oakley denies ever making such

---

[4] The Court only means to say that she had some physical restriction. As discussed, the regulations specifically recommend that pregnancy related conditions not be considered a "limitation," in the legal sense.

a comment (Oakley Dep. at 18), even if made, the statement actually reinforces the notion that the defendant, in fact, viewed the plaintiff's condition as temporary and not permanent. The defendant, in other words, expressly contemplated a time when the plaintiff's application could be resumed. As stated, apart from the most unusual circumstances not present here, a disabling condition must be permanent. *See Leahy*, 2008 WL 2946007, at *4; *see also Adams*, 187 F .3d at 316-17. If the defendant did not perceive the plaintiff's condition as permanent, then it cannot be said that it "regarded" her as being disabled.

Even further to that end is the evidence that the plaintiff's application was never actually denied. It was simply placed on hold. (Galloway Aff. ¶ 4; Alday Aff., Attach. 1-3.) This is not the sort of decision that suggests either a belief in a permanent disability or an intent to discriminate.[5] The defendants were constrained to honor, and reasonably so, the plaintiff's own submitted restrictions.

The plaintiff has not offered any evidence that the defendant otherwise regarded her condition as permanently disabling. As a result, there is no evidence that the defendant can be said to have presumed a substantially limiting impairment that she did not have. *See Pollard*, 281 F.3d at 471. In fact, the evidence suggests that exact opposite. The plaintiff, without citation, states that "Bryson's disability cannot be said to be temporary under the ADA." (Pl. Resp. at 15.) But, that is precisely what courts have concluded – that

---

[5] The plaintiff has also alleged that the defendant, insofar as it delayed consideration of the application, has enforced a type of 100% healed policy, which the plaintiff contends is a *per se* violation of the ADA. (Pl. Mem. at 9.) The Court need not entertain the argument seriously other than to reemphasize that the unanimous decision of the federal courts is that normal pregnancy is a temporary condition, which defendants are not required to accommodate as disability. And, as the defendant argues, there is unrefuted evidence that the lifting requirement was an essential function of the job, (Oakley Dep. at 14; Davey Aff. ¶ 2; Alday Aff. ¶ 2), which can be imposed or measured without being characterized as a 100% healed policy. *See Lenker v. Methodist Hospital*, 210 F.3d 792, 798 (7th Cir. 2000) ("He cites statements from hospital personnel that an employee with a lifting restriction would not be allowed to return to work until the restriction was removed because lifting was an essential function of the job that could not be accommodated. This is a far cry from saying that Lenker's MS must be 100% healed before being allowed to return to work."). The argument is a red herring.

11

pregnancy is temporary and not constructively permanent. *See Leahy*, 2008 WL 2946007, at *4; *Jessie v. Carter Health Care Center, Inc.*, 926 F. Supp. 613, 616 (E.D.Ky.1996) (holding that pregnancy is a "temporary non-chronic condition of short duration which is not a disability under normal circumstances"); *see also Pollard*, 281 F.3d at 468-69 (finding that temporary impairments are not disabilities under the ADA).

The Court need not specifically determine whether the acts or beliefs of Spartanburg Regional can be imputed to the defendant. Even if they could, no issues of fact exist as to whether either entity believed the plaintiff suffered a disability, when she, in fact, did not.

### *C.    Prejudice*

The plaintiff's claims whether based on an actual or regarded-as disability also fail because she has not created issues of fact as to whether she was excluded from employment or some benefit due to discrimination[6] solely on the basis of the disability. *See Doe*, 50 F.3d at 1264-65. Specifically, and as discussed, she was never excluded from any employment or benefit due to discrimination by the defendants. Instead, a hold was placed on her application pending her physician's decision to either remove the lifting restriction or otherwise clear the plaintiff to take the functional capacity examination. (Galloway Aff. ¶ 4; Alday Aff., Attach. 1-3.) She was not excluded from employment. Critically, at the time she filed her charge with the EEOC, her application was still pending with the defendant. (Davey Aff. ¶ 12.) The plaintiff has not submitted any decisional law that suggests that the hold itself satisfies the requirement that she have been excluded from employment.

---

[6] According to the ADA the term "discriminate" includes:

> denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant.

42 U.S.C. § 12112(b)(5)(B).

Regardless, she was, in fact, not disabled nor is there any evidence to suggest that she was so considered by the defendant.

For all these reasons, the plaintiff's ADA claims, whatever basis, should be dismissed. The plaintiff has not pled any Pregnancy Discrimination Act claim.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that the defendant's motion for summary judgment [Doc. 42] be GRANTED and all claims dismissed with prejudice.

IT IS SO RECOMMENDED.

                                                                      s/Bruce H. Hendricks
United States Magistrate Judge

March 25, 2010
Greenville, South Carolina